*Northern District*

No. 5443

**ALLEN B. SCHWARTZ, ET ALS, TRS.**

**v.**

**ABBOTT MOTORS, INC.**

(February 17, 1961)

*Present:* Eno, J. (Presiding), & Kelleher, J.
Case tried to *Parker, J.,* in the Second District
Court of Eastern Middlesex. No. 7102 of 1958.

*Eno, J.* This is an action of contract by which the plaintiffs seek to recover the balance due on a conditional sale agreement, in the amount of $1034.60. The defendant's answer contains a general denial, a plea of the Statute of Frauds (waived in open Court); and a denial that the defendant had any business dealings with the plaintiffs as the Community Acceptance Company.

*At the trial there was evidence that* the plaintiffs were trustees under a written declaration of trust known as Community Acceptance Co., and that they had duly filed a business certificate that they were doing business as Coleman Acceptance Plan; that on May 28, 1957, they purchased from the defendant a conditional sales contract bearing the same date, admitted in evidence as Plaintiffs' Exhibit 1. Said contract purported to represent a purchase by one Thomas P. Sandstrom, hereinafter referred to as "Sandstrom" of a used 1956 Ford Custom Tudor automobile from the defendant, and that the net balance remaining due at that time was $2,340.00. The said contract further purported to establish the fact that on the same day, May 28, 1957, the said contract was assigned, in writing, to the Community Acceptance Company, d-b-a Coleman Acceptance Plan, and that said assignment contained a warranty made by the defendant to the Community Acceptance Company, d-b-a Coleman Acceptance Plan, that the vehicle described in the contract "was never used as

a taxi, police car or for public hire"; that the balance due at the time the plaintiffs acquired the contract was $1034.60; it appears further from the report that "Sandstrom" having defaulted in his payments, the automobile was repossessed on March 28, 1958, and later sold for $701.00; that the assignment by the defendant to the plaintiffs was one "without recourse", but it contained a clause providing that "in the event that any of the representations or warranties are untrue or broken" the assignor (the defendant) would be obligated to the assignee (the plaintiffs) "as if it had executed the form of a "With Recourse Assignment" set forth therein. There was further evidence that the plaintiffs discovered after they had repossessed said automobile, that the same had been purchased from the defendant by the Abbott Rental Co., Inc., on October 26, 1955, and on the same date leased by it to the Boston Filter Company, that at the expiration of the lease, May 28, 1957, it was again sold to the defendant and on the same date sold by the defendant to said "Sandstrom". The defendant admitted by answers to interrogatories that the vehicle had been rented out by the Abbott Rental Co., Inc., for hire in connection with the carrying on of its business of rental of motor vehicles for hire. There was also evidence that the Abbott Rental Co., Inc., was engaged in the business of the rental of motor vehicles for public hire.

. . The plaintiffs duly filed several requests for

rulings, but waived them all except the following which the Court denied:

1. On all of the evidence the plaintiffs are entitled to recover for the reasons:

b. That the defendant, in writing, assigned the said conditional sales contract to the plaintiffs which assignment appears on the reverse side of the said contract.

c. That the said automobile so described in the said contract had, prior to its sale to Thomas P. Sandstrom under the said conditional sales contract of May 28, 1957, been used for public hire.

The Court made several findings of facts and rulings of law, those material being substantially to the effect that

a) the assignment having been made to the "Community Acceptance Company, d-b-a Coleman Acceptance Plan, rather than to the trustee thereof, there was no valid assignment of the contract.

b) the vehicle having been leased only to one firm, it had not been used for "public hire" but only for hire, and therefore there was no breach of the warranty and the assignment was not controlled by the "with recourse" assignment.

The Court found for the defendant. The plaintiffs claim to be aggrieved by the denial of their requests and the Court's findings hereinabove mentioned.

The first question to be considered is whether or not there was a valid assignment of the contract.

The plaintiffs concede that "a trust,

as an entity, cannot itself enter into any contract", and that this is supported by the case of *Peterson v. Hopson,* 306 Mass. 597, 612, cited by the trial Court.

The plaintiffs agree also with the principle of law expounded in two other cases cited by the Court, *Dolben v. Gleason,* 292 Mass. 511, 514; *Larson v. Sylvester,* 282 Mass. 352. In both of these cases, however, the trustees themselves were sued and they sought to avoid liability on the ground that the trust only was liable, and not the trustees personally. In both of these cases the Supreme Court held that a trust as such is no legal person, it has no capacity to contract, it acts through its trustees, and as the trustee he is personally liable, unless at the time of entering into the contract he excluded himself from such personal liability.

In the case at bar the plaintiffs are described as trustees under a written declaration of trust and that the name of the trust is "Community Acceptance Company" doing business as the "Coleman Acceptance Plan".

The defendant having neglected to deny that the plaintiffs were trustees as provided by G. L. (Ter. Ed.) c. 231, §30, as amended, that fact was admitted without any further proof. *Lonergan v. Amer. Ry. Express Co.,* 250 Mass. 30.

Article II of the trust agreement contains the following:

"All acts of the Trustees relating to this

trust may be done under the name of Community Acceptance Company or such other name or names as the Trustees may from time to time adopt."

■ The assignment on which the present action is founded was made to "Community Acceptance Company d-b-a Coleman Acceptance Plan". The trustees, like any individual, had the right to adopt any name they saw fit. *Rand v. Farquhar,* 226 Mass. 91. The name under which they were doing business was duly registered in compliance with G. L. (Ter. Ed.) c. 110, §§5 and 6, as amended. Any transaction of the trustees under these two trade names was their own for which they could sue and be sued. We think, therefore, that the Court could have found that the assignment was valid.

■ The only other question to decide is whether or not the said automobile was ever "used for public hire", since there is no evidence it was ever used "as a taxi" or "police car".

The plaintiffs in their excellent brief strongly argue that the vehicle in question "had been rented out to a member of the public by the defendant's predecessor in title who was engaged in the very business of renting vehicles for public hire" and therefore "the warranty had been breached".

At the request of both parties the trial judge made additional "Findings and Rulings" and in conclusion found the following:

"The Court finds that the automobile covered by the conditional sales agreement was sold, 26 Oct., 1955, by the Defendant to Abbott Rental Co. Inc. The business of the Abbott Rental Co. Inc. was then and in May, 1957, that of leasing automobiles to the public. The Abbott Rental Co. Inc. on 26 October, 1955 leased the car to the Boston Filter Company. There was no evidence that it was ever leased to any other person. On May 28, 1957, the Defendant bought the car from Abbott Rental Co. Inc., and on the same day it sold the car to Sandstrom under the Conditional Sales Agreement upon which the plaintiff brings the suit. Sandstrom defaulted in payments under the Conditional Sales Agreement, and on 9 September, 1958, the Plaintiff demanded payment of $1034.60 being the amount due on the Conditional Sales Agreement. The Abbott Rental Co. Inc., and the Defendant are located on the same premises. Walter Abbott is the President of both corporations.

On these facts, the Court finds that the automobile was not used for public hire. The automobile was used for hire, but the warranty was not that it was not to be used for hire, but for *public hire*.

By the use of the "public" the warranty was limited to public hire. Here the use of the car and its hire had been by only one person and not by the public in general.

The Court finds for the Defendant on the grounds that there was no breach of warranty and therefore the assignment was not controlled by the With Recourse Assignment."

If plaintiffs' requests for rulings 1b and 1c

are to be considered as requests for findings of facts, the trial judge having found contrary facts, there was no error. *Dolham v. Peterson,* 297 Mass. 479, 481.

Were the requests, then requests for rulings of law?

We are of opinion that the trial judge correctly ruled that on all the evidence in the case the vehicle had not been used for "public hire". The question was not that the Abbott Rental Co., Inc., *could* have used it for public hire, but whether it had ever been *used* for public hire.

See *Gibbons v. Denoncourt,* 297 Mass. 448, 457.

No case has been cited to us by either side which would help us to clarify this question. We have not found any directly in point.

 It seems to us that an automobile is public only when it is owned by the public or its uses are public, like a police car or a taxi cab. In this case it was leased to only one company for its own use, or at least it does not appear otherwise. It could not be found, therefore, that it had been used for "public hire".

However, even if it could be ruled that the trial judge made erroneous findings of facts, our final conclusion would have to be that there was no prejudicial error in this case.

 The Appellate Division cannot and

does not review findings of facts but only rulings of law, which in this case are only the denial of plaintiffs' requests 1b and c. *Loanes v. Gast,* 216 Mass. 197; *Bresnick v. Heath,* 292 Mass. 293, 296; *E. A. Strout Realty Agency, Inc. v. Gargan,* 328 Mass. 524, 525; *Butler v. Cromartie,* 339 Mass. 4.

The requests do not seek a ruling that the evidence "warranted" a finding for the plaintiffs, or that the evidence was "sufficient" for such a finding, but rather asked the Court to rule that on the facts stated in requests b and c, the plaintiffs were "entitled to recover".

█ It can rarely be ruled as matter of law that a plaintiff, who has the burden of proof, has maintained his case, since the decision usually rests on the credibility of oral testimony and the inferences to be drawn therefrom. *Whittaker v. Eastern States Engineering Corp.,* 269 Mass. 451, 458; *Winchester v. Missin,* 278 Mass. 427, 428; *Castano v. Leone,* 278 Mass. 429, 432; *Hoffman v. Chelsea,* 315 Mass. 54.

█ A judge sitting without a jury has two functions: one is to consider the evidence and make findings of facts, the other is to make rulings of law. *John Hetherington & Sons, Ltd. v. William Firth Co.,* 210 Mass. 8, 18; *Ashapa v. Reed,* 280 Mass. 514, 516. In considering the facts he performs the duties of a jury in a trial by jury. Had this case been tried before a jury, a verdict could not have been ordered for the plaintiff.

Similarly the trial judge could not rule that the plaintiff was entitled to recover as a matter of law.

The report is to be dismissed.

Shair & Gorfinkle of Boston, for the Plaintiff.

Harnish, Mansfield, Marsh & MacDonald of Waltham, for the Defendant.