## CIRCUIT COURT OF THE CITY OF RICHMOND

Clifford W. Smith

v.

Marjorie H. Paige

May 14, 1990

Case No. LR 2818-2

By JUDGE ROBERT L. HARRIS, SR.

This case came before the court for hearing on December 5, 1989, on cross-motions for Summary Judgment and was taken under advisement. Counsel have now submitted briefs. Under Rule 3:18 of the Rules of the Virginia Supreme Court, a party may be granted summary judgment only when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law, based on the pleadings and admissions of the parties.

The undisputed facts, based on plaintiff's Motion for Judgment and attachments thereto, defendant's Grounds of Defense and Counterclaim, plaintiff's Grounds of Defense to defendant's Counterclaim, and plaintiff's Answers to Defendant's Requests for Admission are as follows. On July 15, 1985, defendant Paige, with her husband, Robert P. Paige, executed a promissory note in the amount of $43,000 plus interest, payable to the plaintiff. The note recited that it was secured by a Security Agreement and

Financing Statement executed by Robert P. Paige, of the same date.

At some later date, Mr. Paige filed for bankruptcy, and the Paiges defaulted on the note. Smith recovered some of the property which secured the note during the pendency of the bankruptcy proceeding. Smith disposed of the property without giving notice to Ms. Paige, the defendant herein, without advertising the sale and without receiving bids on the property. The defendant did not waive or relinquish any right to notice of the sale. Plaintiff, in his Motion for Judgment, seeks to recover the deficiency remaining after giving defendant credit for the value of the recovered collateral, plus attorney's fees and interest. The balance due, as of the date of the Motion for Judgment, is alleged to be $35,785.20.

The issue framed by the pleadings and arguments of the parties is: whether the plaintiff, who would otherwise be entitled to judgment against the defendant, is barred from recovering a deficiency judgment because of his failure to notify the defendant of the disposition of the collateral securing the note. For the purposes of resolving this issue, the court accepts the defendant's admission, in her brief at pages 2-3, that she signed the note as co-maker or guarantor. The court does not consider at this time the other disputed issues raised in defendant's counterclaim, as they are not relevant to the pending motions for summary judgment.

Article 9 of the Uniform Commercial Code ("UCC") as codified in § 8.9-101 *et seq.* of the Virginia Code applies here. Article 9 applies to "any transaction . . . which is intended to create a security interest . . ." except for exclusions recited elsewhere. Va. Code Ann. Section 8.9-102(1)(a) (Supp. 1989).

In addition to providing for the creation and perfection of security interests, priorities among creditors, and filing requirements, Article 9 governs the rights of the parties upon default. Section 8.9-504 provides for the secured party's right to dispose of collateral after default and the debtor's liability for any deficiency. Paragraph (3) of § 8.9-504 requires the secured party to give reasonable notice to the debtor of any proposed sale of the collateral unless the debtor has signed, after default, a statement renouncing her right to notice. The

same paragraph requires that every aspect of the disposition must be commercially reasonable. Section 8.9-507(1) provides that if the secured party fails to comply with the foregoing provisions, the debtor has a right to recover any loss caused thereby.

Plaintiff's answers to defendant's requests for admission, marked as Defendant's Exhibit 3 at the December 5, 1989, hearing, establish that the plaintiff did not give notice to the defendant of the disposition of the collateral under § 8.9-504(3). *See* Requests for Admission Nos. 2-3. Plaintiff's admissions also establish that the defendant did not sign a waiver of her rights to notice under § 8.9-504(3). *See* Request for Admission No. 5. Defendant argues that Requests for Admission Nos. 4 and 6-7 establish that the sale of the collateral was not commercially reasonable. The cited admissions establish (1) that the plaintiff did not advertise the sale and (2) that the plaintiff did not receive bids for the sale. Those two facts in isolation do not establish that the sale was commercially unreasonable. The facts establish, at best, that the collateral was not disposed of by public sale. However, § 8.9-504(3) allows for private sales, as long as all aspects thereof, including the method, manner, time, place, and terms are commercially reasonable. Thus, the issue of commercial reasonableness is in dispute.

On the cross-motions for summary judgment, this court must determine: (1) whether the defendant is a "debtor" as defined in § 8.9-105 (1)(d) such that she is entitled to notice and (2) if the answer to (1) is "yes," whether a creditor who has failed to give her notice is barred from recovering any deficiency by virtue of that failure alone.

Section 8.9-105(1)(d) defines the term "Debtor" as follows:

> [T]he person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral . . . . Where the debtor and the owner of the collateral are not the same, the term "debtor" means the owner of the collateral in any provision of the title dealing with the collateral, the obligor in any provision dealing with the obligation,

and may include both where the context so requires . . . .

Va. Code Ann. (Supp. 1989).

The Virginia Supreme Court has held that, for purposes of the notice requirement in § 8.9-504(3), an obligor is a "debtor," regardless of whether he or she owns the collateral. *Rhoten v. United Virginia Bank*, 221 Va. 222, 269 S.E.2d 781 (1980). *Rhoten* was a case of first impression. The court's decision therein was based on the policy underlying the notice requirement. The debtor is given notice so that she may participate in the sale in order to minimize her potential liability for any deficiency. *Id*. at 227, 269 S.E.2d at 784 (quoting from *Chase Manhattan v. Natarelli*, 93 Misc. 2d 78, 401 N.Y.S.2d 404 (1977)). Because an obligor on the note, whether or not she owns the collateral, is liable for any deficiency under Section 8.9-504(2), she has as great an interest as the owner in maximizing the proceeds of the sale. *Id*. at 228, 269 S.E.2d at 784-85. The defendant here is in the same position as was Mr. Rhoten. She is a co-obligor on the note although she had no ownership interest in the collateral that secured it. Thus, she is considered a debtor entitled to notice under § 8.9-504(3).

Next, this court must consider whether the plaintiff's failure to give notice bars the recovery of a deficiency judgment. The court in *Rhoten* was not faced with this issue. There the plaintiff was the debtor, who had sued under § 8.9-507(1) to recover damages for the creditor's failure to comply with the UCC. The Code does not explicitly provide for a bar to the creditor's recovery as a consequence of his failure to give notice, and the Virginia Supreme Court has not had occasion to rule on the issue.

This court turns to several sources of persuasive authority, in addition to the text of the UCC itself, to decide the question: (1) Federal courts applying Virginia law; (2) courts in other states; and (3) Virginia Circuit Courts.

In the absence of a definitive ruling by the Virginia Supreme Court, the Fourth Circuit has held that a bankruptcy court did not err in concluding that the creditor was barred from recovering a deficiency. *In re Bishop*, 482 F.2d 381 (4th Cir. 1973). The persuasive value of *Bishop*

is diluted, however, because the court opined that the creditor would lose under the alternative theory advanced by some state courts. *Id.* at 385. That alternative rule is a burden-shifting approach. The creditor is not completely barred, but he must prove, by evidence other than the amount of the proceeds of the sale, that the market value of the collateral at the time of sale was less than the balance due on the obligation at the time of default. *Id.* at 385-86.

As the Fourth Circuit in *Bishop* noted, courts have not ruled uniformly on the issue. *Id.* at 385. The "absolute bar" rule seems to claim a majority of the states that have squarely addressed the issue. *See* Annotation, *Uniform Commercial Code: Failure of Secured Creditor to Give Required Notice of Disposition of Collateral as Bar to Deficiency Judgment*, 59 A.L.R.3d 401 (1974 & Supp. 1989). However, jurisdiction-counting in this area is difficult. Some states seem to have a conflict within their own borders, as noted with regard to New York and Massachusetts in the annotation. *Id.* at 416. Moreover, some jurisdictions once counted as absolute bar states have switched in recent years to apply the burden-shifting rule. The forum states of at least two of the absolute bar cases cited by the defendant have rejected the rule in later cases. *See* the following New York cases: *Leasco Computer v. Sheridan Industries*, 82 Misc. 2d 897, 371 N.Y.S.2d 531 (N.Y. Civ. Ct. 1975) (New York Civil Court expressly rejected its earlier decision in *Leasco Data v. Atlas Shirt Co.*, 66 Misc. 2d 1049, 323 N.Y.S.2d 13 (1971), relied upon by defendant here, stating that the case "should no longer be regarded as controlling or followed," *Leasco Computer* at ---, 371 N.Y.S.2d at 535); and *Security Trust Co. of Rochester v. Thomas*, 59 A.D.2d 242, 399 N.Y.S.2d 511 (N.Y. App. Div., 4th Dept. 1977) (New York Appellate Court applied burden shifting rule)). *See also Landmark First Nat. Bank v. Gepetto's*, 498 So. 2d 920 (Fla. 1986), and *Weiner v. American Petrofina Marketing, Inc.*, 482 So. 2d 1362 (Fla. 1986) (adopting the burden-shifting rule for Florida, implicitly overruling the Florida case cited by the defendant, *Barnett v. Barnett Bank of Jacksonville*, 345 So. 2d 804 (Fla. Dist. Ct. App. 1977)).

In view of the conflict among the various states that have ruled on the issue, the court is moved to make

a few observations. First, no approach can claim a large majority; there are a substantial number of cases applying each rule. Further, well-reasoned opinions, based on sound policy considerations, have been written on both sides of the issue. In summary, as Judge Sands of this court noted, there is an irreconcilable conflict of authority upon the issue. *Richmond Postal Credit Union v. Cooper*, 2 Va. Cir. 439 (Richmond 1975).

Although the court agrees with Judge Sands's assessment of the decisional split, I cannot follow his holdings as to the deficiency judgment issue. In *Cooper*, Judge Sands held that a creditor who failed to give notice was absolutely barred from recovery. *Id.* at 441. His decision was based partly on a passage from an article by Professor Richard Speidel, an acknowledged UCC authority, and partly on the policy underlying pre-UCC commercial law. Professor Speidel, in his article, *Enforcing Security Interests in Consumer Goods: Some Notes on the Vicious Cycle*, 7 U. Rich. L. Rev. 187 (1972), does not take a stand on the deficiency judgment issue. He merely notes that, under a developing line of cases, a secured party may be precluded from recovery. *Id.* at 200. Of course, another line of cases was concurrently developing the alternative theory.

Judge Sands's reliance on "legislative attitude" as indicated by former law, is misplaced. There are provisions of the UCC that eliminate any need to presume the attitude of the legislature from prior enactments. In a recent Virginia Circuit case, Judge Persin of Buchanan County applied the burden-shifting rule, holding that the absolute bar rule would be contrary to the intent of the UCC. *Tazewell Oil Co., Inc. v. Miners and Merchants Bank and Trust Co.*, Case No. 85-86, Opinion Letter dated April 10, 1990.[1] The drafter's intent relied upon by Judge Persin is contained in Va. Code Section 8.1-106(1), which provides that:

> The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position

---

[1] This opinion is printed above at page 245. [Reporter's Note]

as if the other party had fully performed, but neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law.

Another manifestation of the drafters' intent is found in § 8.9-507, which provides an affirmative damages remedy for a debtor where the collateral was disposed of in a manner violative of the article's provisions.

In view of these two passages, the absolute bar rule seems to be, as Judge Persin opined, contrary to the intent of the UCC. If the aggrieved party in a deficiency judgment case, that is, the debtor, who claims no notice was sent or that the sale was not commercially reasonable, is to be put in as good a position as if the creditor had complied with the provisions of Article 9, the burden-shifting rule should be applied. In a situation where the indebtedness greatly exceeds the value of the collateral, the absolute bar rule would work a harsh forfeiture, which clearly is not the aim of the UCC. If the value of the collateral is, in fact, greater than the amount of the indebtedness, but the collateral was sold at a lower price because of the commercially unreasonable sale or lack of notice, the debtor has a damages remedy under § 8.9-507(1).

The burden-shifting approach treads a middle ground between the absolute bar rule and a rule that would leave the debtor only to her damages remedy. The most compelling rationale for the absolute bar rule is the need to prevent creditor overreaching. Absent notice pursuant to Section 8.9-504(3), the debtor, who had no chance to be present at the disposition, is in a poor position to prove a case for damages under § 8.9-507(1). By shifting the burden of proof as to the value of the collateral at the time of recovery and disposition to the creditor, the burden-shifting rule adequately protects the debtor's right to notice without producing a forfeiture. Such an approach balances the competing policy considerations of the UCC.

Based on the foregoing, this court adopts the burden-shifting rule as articulated by the New York Supreme Court, Appellate Division, in *Security Trust Co. of Rochester v. Thomas*, 59 A.D.2d 242, 399 N.Y.S.2d 511 (1977). A secured creditor may recover a deficiency after disposition of

collateral if he proves: (1) that reasonable notice of the sale as provided in § 8.9-504(3) was given to the debtor *and* that the sale was commercially reasonable; or (2) that the amount of the debt exceeded the fair market value of the collateral at the time of disposition by the amount of the deficiency sought.

In order to recover a deficiency judgment here in the absence of notice to the debtor, Mr. Smith must prove the amount of the deficiency by proving the amount of the debt and the fair market value of the collateral at the time of recovery and sale from evidence other than the sale price.

Both motions for summary judgment are denied because there is a material issue in dispute as to the value of the collateral.